UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────

KIMBERLY CHRISTIAN,

              Plaintiff,

          V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

              Defendant.
─────────────────────────────────

**REPORT AND
RECOMMENDATION**

12-CV-587
(MAD/VEB)

## I. INTRODUCTION

In December of 2008, Plaintiff Kimberly Christian applied for disability insurance benefits under the Social Security Act. In February of 2009, she applied for supplemental security income ("SSI") benefits. Plaintiff alleges that she has been unable to work since February of 2007 due to active rheumatoid arthritis. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Olinsky Law Group, Tanisha T. Bramwell, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On June 26, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for disability insurance benefits and SSI benefits on December 4, 2008 and February 2, 2009, respectively, alleging disability beginning on February 2, 2007. (T at 178-83, 184-44).[2] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on May 21, 2010, in Syracuse, New York before ALJ Joseph Grow.[3] (T at 42). Plaintiff, represented by counsel, appeared and testified. (T at 46-61). Testimony was also received from Richard Smith, a vocational expert. (T at 61-70).

On May 28, 2010, ALJ Grow issued a written decision denying Plaintiff's applications. (T at 17-25). The ALJ's decision became the Commissioner's final decision on February 10, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 2-5).

Plaintiff, through counsel, commenced this action on April 5, 2012. (Docket No. 1). The Commissioner interposed an Answer on August 1, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on September 11, 2012. (Docket No.11). The Commissioner filed a Brief in opposition on October 24, 2012. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[3]The ALJ presided via videoconference from Baltimore, Maryland. (T at 44).

accompanied their briefs with a motion for judgment on the pleadings.[4]

For the reasons that follow, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and that this case be remanded for further proceedings.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

---

[4]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[5]

---

[5]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (February 2, 2007) and met the insured status requirements of the Social Security Act through September 30, 2011.  (T at 19).  The ALJ found that Plaintiff's rheumatoid arthritis met the definition of a severe impairment under the Act.   (T at 19-20).  However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 20).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

---

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

perform sedentary work, as defined in 20 CFR § 404.1567 (a) and 416.967 (a), with some limitations. (T at 20-24). The ALJ found that Plaintiff was unable to perform her past relevant work as a home health aide. (T at 24).

Considering Plaintiff's age (31 years old on the alleged onset date), education (limited), work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 24-25). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from the alleged onset date (February 2, 2007) to the date of his decision (May 28, 2010). (T at 25).

As noted above, the ALJ's decision became the Commissioner's final decision on February 10, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 2-5).

**2.     Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments in support of this position. First, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. Second, Plaintiff challenges the ALJ's credibility assessment. Third, Plaintiff argues that the ALJ's step five analysis was flawed. This Court will address each argument in turn.

**a.     RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an

ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the RFC to perform sedentary work, except that she could never climb ladders, ropes, or scaffolds and could kneel, crouch, and crawl only occasionally. The ALJ further found that Plaintiff required worked that allowed a sit/stand option. (T at 20).

Plaintiff contends that the ALJ did not adequately incorporate the findings of Dr. Kalyani Ganesh, a consultative examiner. Dr. Ganesh assessed a "moderate to severe limitation to any sustained activity because of chronic pain involving multiple joints especially the hands and feet." (T at 449). The ALJ afforded "great weight" to Dr. Ganesh's opinion. (T at 23).

Sedentary work involves lifting up to 10 pounds at a time and occasionally lifting and carrying light objects. It also generally involves up to 2 hours of standing or walking and 6 hours of sitting in an 8-hour work day. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); SSR 83–10; 20 C.F.R. § 404.1567(a).

Presumably, the ALJ believed Dr. Ganesh's assessment was consistent with (and,

indeed, supportive of) his determination that Plaintiff could perform sedentary work with some limitations. However, the ALJ did not explain how he incorporated Dr. Ganesh's assessment into the RFC determination. This Court's ability to discern whether and how the ALJ reconciled his RFC determination with Dr. Ganesh's opinion is impeded by the fact that the ALJ did not provide a function-by-function analysis.

An RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).

In particular, the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y.1999). After that analysis is completed, the ALJ may express the RFC in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

The Second Circuit has not yet decided whether failure to provide a function-by-function assessment is *per se* grounds for a remand.

At least three circuit courts of appeal have concluded that a function-by-function analysis is desirable, but not an absolute requirement if the rationale for the ALJ's RFC assessment can be readily discerned. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Depover

8

v. Barnhart, 349 F.3d 563, 567 (8th Cir.2003) (an ALJ does not fail in his or her duty to assess a claimant's RFC on a function-by-function basis merely because the ALJ does not address all areas regardless of whether a limitation is found); Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547 (6th Cir.2002).[6]

District courts in the Second Circuit have reached conflicting conclusions. See, e.g., Wood v. Comm'r of Soc. Sec., No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009)(collecting cases); McMullen v. Astrue, 05-CV-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008); Brown v. Barnhart, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr.15, 2002)("In sum, because the ALJ did not properly apply the legal standard in Social Security Ruling 96-8p for assessing residual functional capacity, I cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her past work was supported by substantial evidence."); Matejka v. Barnhart, 386 F.Supp.2d 198, 208 (W.D.N.Y.2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk ... Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."); but see Casino-Ortiz v. Astrue, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007)(sustaining ALJ's decision, notwithstanding failure to provide function-by-function analysis); Novak v. Astrue, No. 07 Civ. 8435, 2008 WL 2882638, at *3 & n. 47 (S.D.N.Y. July 25, 2008)("The A.L.J. must avoid perfunctory determinations by considering

---

[6]The Third Circuit and Seventh Circuit have reached similar conclusions, albeit in unpublished decisions. See Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (3d Cir.2000)) ("Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."); Zatz v. Astrue, 346 F. App'x 107, 111 (7th Cir.2009) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.").

all of the claimant's functional limitations, describing how the evidence supports her conclusions, and discussing the claimant's ability to maintain sustained work activity, but she need not provide a narrative discussion for each function."); but see Martin v. Astrue, No. 05-CV-72, 2008 WL 4186339, at *16 (N.D.N.Y. Sept. 9, 2008) (declining to remand, despite finding that the ALJ grouped the functions in his function-by-function analysis because "treating the activities separately would not have changed the result of the RFC determination").

In general, this Court is inclined toward the view that an ALJ's failure to provide a function-by-function analysis might constitute harmless error, provided that the absence of analysis did not frustrate meaningful review of overall RFC assessment.[7]

In this case, remand is warranted under either a *per se* standard or harmless error review. The ALJ afforded "great weight" to Dr. Ganesh's opinion, including the consultative examiner's assessment that Plaintiff had a "moderate to severe limitation to any sustained activity. . . ." (T at 449). Without a function-by-function assessment, this Court cannot determine whether or how the ALJ incorporated the consultative examiner's finding into the RFC determination.

In addition and in the alternative, the ALJ did not adequately develop the administrative record. In particular, the ALJ should have sought an assessment from Dr. Mary Abdulky, of Arthritis Health Associations, PLLC.

Dr. Abdulky, who is Board Certified in Rheumatology, treated Plaintiff from June

---

[7]Several courts have recognized the general applicability of the harmless error rule to the review of disability denial claims. See, e.g., Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995).

2008 to January 2010. At Plaintiff's initial visit on June 12, 2008, Dr. Abdulky noted "inflammatory arthritis affecting several PIP joints" with "prominent MCP joints with squeeze tenderness present." (T at 459). Later that month, Dr. Abdulky reported that Plaintiff attempted to take prednisone, but discontinued after it caused agitation and palpitations. (T at 457). She diagnosed seropositive rheumatoid arthritis. (T at 457).

During a July 2008 visit, Plaintiff reported further medication side effects and "about 5 hours of morning stiffness daily." (T at 456). In August of 2008, Carol Stoianoff, Dr. Abdulky's nurse practitioner, noted that Plaintiff had not been working due to fine motor limitations. (T at 455). She described Plaintiff's "disease activity" as "moderate" and increased her medication dosage "to get better control of her disease" in the hope that Plaintiff "could go back to work." (T at 455).

In November of 2008, Nurse Stoianoff reported that Plaintiff had continued pain and difficulties with side effects. In addition, it was noted that Plaintiff had trouble with insurance reimbursement for medication and was "unable to work because of hand and wrist discomfort." (T at 454). In October of 2009 and January of 2010, Nurse Stoianoff and Dr. Abdulky noted that Plaintiff's arthritis was complicated by non-compliance with medication, which was the result of side effects and "financial constraints." (T at 492).

It is well-settled in this Circuit that in light of the "'essentially non-adversarial nature of a benefits proceeding,'" the ALJ has an affirmative duty to develop the record. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000); Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996).

"The duty of an ALJ to develop the record is 'particularly important' when obtaining

information from a claimant's treating physician due to the 'treating physician' provisions in the regulations."[8] Dickson v. Astrue, 06-CV-511, 2008 WL 4287389, at *13 (N.D.N.Y. Sept.17, 2008) (citing Devora v. Barnhart, 205 F. Supp.2d 164, 172 (S.D.N.Y.2002)).

In this case, given Dr. Abdulky's treating relationship and speciality in the area of arthritis care, the ALJ should have contacted the treating physician and requested an opinion regarding Plaintiff's residual functional capacity.  See 20 C.F.R. § 404.1513(b)(6) (a "medical report" should include "[a] statement about what [the claimant] can still do despite [her] impairment(s)"); Lawton v. Astrue, 2009 WL 2867905, at *16 (N.D.N.Y. Sept.2, 2009)("The ALJ's failure to re-contact [plaintiff's treating physician] in an attempt to obtain an RFC or medical source statement constitutes a breach of the ALJ's duty to develop the record, and provides a basis for remand.").[9]

The Commissioner contends that Dr. Abdulky's treatment notes are sufficient to sustain the RFC assessment and, as such, a remand for further development of the record is not required.  See Jones v. Astrue, 11–cv–01249, 2012 WL 4480691, at *8 (N.D.N.Y.

---

[8]Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).
  Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

[9]Plaintiff's counsel likewise should have been expected to identify the lack of a treating physician's opinion and satisfy his independent duty to develop Plaintiff's case.  However, as noted above, the ALJ has an independent obligation in this regard and a remand is nevertheless required.  This Court also notes that Plaintiff changed attorneys after the Appeals Council denied review and her former attorneys have waived any claim for fees. (T at 1).

Sep't 26, 2012). However, the treatment notes generally indicate serious symptoms (as outlined above) and do not suggest the ability to perform activities on a sustained basis, as would be required for Plaintiff to maintain competitive, remunerative employment. As such, the Commissioner's reliance on the treatment notes as a "complete" medical record and sufficient support for the RFC determination is misplaced.

For the reasons set forth above, this Court finds that a remand is required. The record should be further developed by requesting an assessment from the treating physician. Thereafter, the record (including Dr. Ganesh's assessment) should be reconsidered and, and in any event, a function-by-function assessment of Plaintiff's RFC shall be provided.

### b. Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. See See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.  [Plaintiff's] daily activities;
2.  The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must

state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: She lives with her five (5) children, who range in age from 16 to 2. (T at 46-47). Her sister-in-law provides significant, daily help with child care. (T at 47). Plaintiff completed ninth grade. (T at 47). She worked as a home health aid for several years. (T at 48). She stopped working because of shoulder pain. (T at 48). She cannot maintain a full-time work schedule due to her pain. (T at 50). Sitting or standing for prolonged periods is very difficult. (T at 51). Her ability to use her hands is severely compromised. (T at 51). She has never used a computer. (T at 51). She has pain in her feet and swelling in her ankles. (T at 52). She has had difficulty with her health insurance coverage. (T at 53). Side effects from her medication have been a serious issue and she has experienced very little relief from her pain. (T at 54). During a typical day, her pain is severe (8.5 to 9) and constant. (T at 55). Plaintiff's sister-in-law performs the housework and attends to the care of Plaintiff's children throughout the day. (T at 57-58). Plaintiff cooks using a microwave and is able to clean some dishes. (T at 59). She can stand for 10-15 minutes. (T at 59-60). Due to back pain, she can only sit for about 15 minutes. (T at 60). She needs to lie down throughout the day. (T at 60).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC determination. (T at 23).

15

The ALJ's credibility assessment is problematic and should be revisited on remand. First, while a "claimant's credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." Gehm v. Astrue, No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); see also Patterson v. Astrue, No. 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013)("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination.").

Second, the ALJ discounted Plaintiff's testimony that her sister-in-law provided significant help with childcare, without providing an explanation for this finding or developing the record on this issue. To wit, the ALJ referred to Plaintiff's sister-in-law as "benevolent" and "altruistic," with the insinuation that he considered Plaintiff's testimony regarding her sister-in-law's childcare help implausible. (T at 22, 24). However, Plaintiff identified her sister-in-law (Theresa Waldron) by name (T at 58) and there is no indication that the ALJ contacted Ms. Waldron before discounting Plaintiff's testimony. Many people with health problems and disabilities receive significant support from family members. It was improper for the ALJ to casually dismiss Plaintiff's testimony without developing the record or providing a meaningful explanation for his decision.

Third, the ALJ placed undue weight on Plaintiff's activities of daily living. The ALJ found it significant that Plaintiff acknowledged that she performs limited child care (laying out clothes for her children, reading to the children), microwaves meals, visits family, and

attends to personal hygiene. (T at 22) However, "the mere fact that [a claimant] is mobile and able to engage in some light tasks at [her] home does not alone establish that [s]he is able to engage in substantial gainful activity." Lecler v. Barnhart, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002)(quoting Gold v. Sec'y of Health, Ed. & Welfare, 463 F.2d 38, 41 n. 6 (2d Cir. 1972)). Indeed, it is well-settled that "[s]uch activities do not by themselves contradict allegations of disability," as people should not be penalized for enduring the pain of their disability in order to care for themselves [or their children]." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Under the circumstances, it was error for the ALJ to infer an ability to perform the demands of competitive, remunerative employment on a sustained basis from the ability to perform these very basic activities of daily living.

This is especially true given Dr. Ganesh's assessment that Plaintiff had a "moderate to severe limitation to any sustained activity because of chronic pain involving multiple joints especially the hands and feet." (T at 449). See Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(citations omitted).

Fourth, the ALJ did not give adequate consideration to Plaintiff's work history.

Plaintiff worked for several years as a home health aide (T at 200-201, 209), which included caring for a person with quadriplegia. (T at 48). Some consideration should have been given to this work history when the ALJ assessed Plaintiff's credibility. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

Fifth, the ALJ used Plaintiff's non-compliance with medication as a basis for discounting her credibility, without adequately considering the explanations provided in the record (e.g. insurance reimbursement issues and side effects). SSR 96-7p provides that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.

Sixth, Plaintiff's credibility should be reconsidered after the record has been more fully developed to include the treating physician's opinion.

For the foregoing reasons, on remand, the ALJ should revisit the issue of Plaintiff's credibility.

### c. Hypothetical Questions

Richard Smith, a vocational expert, testified at the hearing before the ALJ. Plaintiff argues that the hypothetical questions presented to the vocational expert were flawed and, thus, the ALJ's reliance on the vocational expert's responses to those hypothetical question

in his step five analysis was misplaced.

Whether a hypothetical given to a vocational is appropriate depends on whether the hypothetical fully encompasses the claimant's limitations. <u>Magee v. Astrue</u>, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing <u>Varley v. Sec'y of Health & Human Servs.</u>, 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." <u>Id.</u>

"[T]he ALJ must present a hypothetical that incorporates all of a claimant's impairments." <u>Salmini v. Astrue</u>, No. 3:06–CV–458, 2009 WL 1794741, *11 (N.D.N.Y. June 23, 2009) (citation omitted). If the ALJ poses "hypothetical questions [that] do 'not include all of a claimant's impairments, limitations and restrictions, or [are] otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.'" <u>Id.</u> (quotation omitted).

Here, the ALJ's questions to the vocational expert assumed the limitations set forth in the ALJ's RFC determination. (T at 63). The vocational expert identified several jobs (order clerk, telephone quotation clerk) that a person with those limitations could perform. (T at 65-67). However, for the reasons outlined above, the ALJ's RFC determination was not properly developed or adequately supported by substantial evidence. As such, the vocational expert's answers cannot constitute substantial evidence as the hypothetical questions may not have incorporated all of Plaintiff's limitations and restrictions. This will likewise need to be revisited on remand.

**3.    Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm,

reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the reasons outlined above, this Court recommends that Plaintiff be GRANTED judgment on the pleadings and that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for further proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: August 12, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated: August 12, 2013

Syracuse, New York